People v Harris (2025 NY Slip Op 25111)

[*1]

People v Harris

2025 NY Slip Op 25111

Decided on May 5, 2025

Criminal Court Of The City Of New York, Bronx County

Wolf, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the printed Official Reports.

Decided on May 5, 2025
Criminal Court of the City of New York, Bronx County

The People of the State of New York

against
Alicia Harris, Defendant.

Docket No. CR-026838-24BX 

For the People: Darcel D. Clark, Assistant District Attorney, Bronx County (by Nadia Alirahi-Rosen) 
For Alicia Harris: Kenneth D. Murphy, Murphy McPartland & Walsh

Ralph L. Wolf, J.

Summary 
Defense motion seeking dismissal of the information on statutory speedy trial grounds is GRANTED. 
 PROCEDURAL HISTORY
The case against Ms. Harris commenced on October 24, 2024 when she was arraigned in Bronx Criminal Court. She pled not guilty, and the case was adjourned to December 5, 2024 for the filing of a Certificate of Compliance (COC). At the time of her arraignment, Ms. Harris was being held on two other matters, one of which was pending sentencing for a felony conviction on a plea she had taken on September 26, 2024 in Kings County. 
On November 20, 2024, and after each subsequent court date in the instant matter, the prosecution submitted orders for Ms. Harris to be produced in Part AP-5. 
On December 5, 2024 this case was on in Part AP-5, but Ms. Harris was not produced and not before the court. The prosecution had not yet filed a COC. The case was adjourned for COC to January 28, 2025. A total of 42 days had elapsed since arraignment. 
On December 20, 2024, the prosecution filed with the court, and served, their Automatic Disclosure Form, their COC, and their Statement of Readiness. A total of 57 days had elapsed since arraignment. 
On December 31, 2024, Ms. Harris was transferred to state prison to serve her sentence on Kings County IND-01048-20. 
On January 28, 2025, the case was on in Part AP-5 for the prosecution's COC. Ms. Harris was again not produced and not before the court. Her attorney noted that she had been transferred to a state correctional facility. According to the prosecution this was the first time [*2]that they learned of the transfer. Defense counsel made an oral motion for a Wade hearing, and the prosecution consented. The matter was adjourned to Part AP-5 for hearings and trial to March 5, 2025. A total of 96 days had elapsed since arraignment. 
On or about February 17, 2025, thousands of New York State corrections officers began a work strike, including at Bedford Hills Correctional Facility where Ms. Harris was housed. 
On February 21, 2025, the prosecution received an email from Bedford Hills Correctional Facility requesting an adjournment for the February 27, 2025 court appearance on Ms. Harris's open case in Felony Part C (FC). The prosecution forwarded that request to the FC judge. 
On February 26, 2025, the prosecution received an email from Bedford Hills Correctional Facility requesting an adjournment date or to make the March 5, 2025 appearance in Part AP-5 a virtual appearance. The prosecution responded to the email, "I did relay your request to the court. I will follow up." But it does not appear this request was forwarded to AP-5 or the presiding judge. 
On March 5, 2025, the case was on in Part AP-5 for hearings and trial, and Ms. Harris was, again, not produced or before the court. The prosecution made the record that due to staffing issues at the Bedford Hills Correctional Facility, Ms. Harris was unable to be produced until March 12, 2025. The case was then adjourned to Part AP-5 for possible disposition and hearings and trial to March 19, 2025. A total of 132 days had elapsed since arraignment. 
On March 18, 2025, the defense filed the instant motion for dismissal of the accusatory instrument pursuant to CPL § 30.30. A total of 144 days had elapsed since arraignment. 
On March 19, 2025, the case was on in Part AP-5 for possible disposition and hearings and trial. Ms. Harris was not produced and not before the court. 

LEGAL ANALYSIS
"There is no doubt that a defendant has a right to be present for any material stage of a trial [which] extends to every ancillary proceeding that is a material stage of the trial, that is, proceedings in which a defendant's presence could have a substantial effect on his or her ability to defend against the charges" People v. Williams, 208 AD3d 65, 73 (1st Dept. 2022), citing CPL 260.20 and People v. Roman, 88 NY2d 18 at 25-26 (1996) [internal quotation marks omitted]. 
It is well established that the prosecution has a duty to make diligent efforts to obtain the presence of the accused, whose location is known, for trial once they have filed their Statement of Readiness (SOR). People v. Anderson, 66 NY2d 529, 539-540 (1985). Where, as here, the prosecution argues that they did not know that the accused had been moved, that lack of knowledge goes to the due diligence exercised. In the post-readiness context, CPL § 30.30 is relevant as the prosecution's knowledge that the accused is in custody. However, they fail to produce him, thereby implicating their ability to actually proceed to trial. See People v. McKenna, 76 NY2d 59, 64 (1990). 
At the outset it should be noted that Ms. Harris has not been produced to appear on this case on any date after her arraignment. When Ms. Harris was arrested on the instant matter she was incarcerated pending sentencing on a B felony as a predicate offender, and had only nominal bail set on the instant case. The prosecution had to know that Ms. Harris's sentence on the pending felony would be substantial, and that once she was sentenced, she would soon be sent to a New York State facility to serve her sentence. After she was sent to the state facility, the prosecution was still required to act with due diligence to produce her. "[D]ue diligence must be shown if detention in the same jurisdiction is to be excluded." People v. Anderson, supra. Here [*3]the prosecution failed to demonstrate the diligence required for time not to be charged to the prosecution. "Since the People failed to demonstrate on this record that they exercised due diligence in attempting to obtain defendant's production in court, [the court] charged them with [the] delay even though this delay occurred after the People had timely announced, on the record, their readiness for trial []." People v. Jones, 105 AD2d 179 (2nd Dept.1984), aff'd sub nom. People v. Anderson, supra. 
There is little guidance regarding the parameters of due diligence in this context. (see People v. Williams, 220 AD2d 787 (2nd Dept 1995); and People v. Cipriano, 221 AD2d 461 (2nd Dept 1995). However, there has been some guidance, In People v. Gonzalez, 235 AD2d 366 (1st Dept 1997), People's repeated requests for production of defendant from Federal custody, followed by frequent calls to the Federal prosecutor to obtain updates, even after being unequivocally advised that defendant would not be released prior to Federal trial constitutes due diligence. In People v. Johnson, 115 AD2d 794 (3rd Dept 1985) a delay caused by defendant's Pennsylvania detention was excluded when People initiated formal extradition proceedings seven days after being apprised of defendant's arrest. 
Here, nothing that resembles this sort of due diligence was exercised. The prosecution argues that their filing of an order to produce on the New York City Department of Corrections (DOC), and then the New York State Department of Corrections and Community Supervision (DOCCS) after each court date was due diligence, but we know that the filing of requests to the detaining authority falls short of due diligence. In People v. Billups, 105 AD2d 795 (2nd Dept 1984) the prosecution filed a detainer in the detaining county and followed up with phone calls. The court held that did not satisfy due diligence when there were other procedures to ensure the appearance of the person incarcerated in a different New York county. Here the prosecution did not make calls or send emails to track Ms. Harris's sentencing or whereabouts. It did respond to emails initiated by DOCCS, but did nothing to help facilitate production. 
The prosecution argues that it learned for the first time during a court appearance on January 28, 2025 from Ms. Harris's attorney that she had been transferred to state custody. The fact that the prosecution did not know that Ms. Harris had been sent to state custody, or know they should have been monitoring the whereabouts of Ms. Harris when she was awaiting sentencing on a serious felony belies due diligence. 
The defense argues that the prosecution could have had their investigators transport Ms. Harris to her court appearance. In response the prosecution provides no evidence, but argues, the "facilities lacked personnel to prepare the necessary paperwork for the person in custody to be produced for court []." This conclusory statement does not appear to be based on any effort to secure Ms. Harris's production for court. "[T]he conclusory assertion of an Assistant District Attorney [] will not satisfy the People's burden [that time should be excluded]." People v. Traficante, 147 AD2d 843 (3rd Dept 1989) citing People v. Santos, 68 NY2d 859 (1986). There is no evidence of an email, phone call or other effort to verify what the prosecution argues to have been the situation in the prison Ms. Harris was housed in at the time of any adjourn date when Ms. Harris was supposed to appear in court. (See People v. Delacruz, 184 Misc 2d 653 (Sup. Ct. 2000) Mere speculation about what the response would have been "is not a sufficient basis upon which to predicate a speedy trial time exclusion"). Further, in one of the email exchanges produced by the Prosecution, DOCCS requested a virtual appearance for Ms. Harris, which the prosecution made no effort to facilitate. This indicates that DOCCS had staff available to accomplish more than just the most basic needs of the people in their custody contrary to what [*4]is alleged by the prosecution. "Even [when the prosecution is advised that defendant will not be produced to court], there must be a showing that the People, after being advised, continued to make reasonable efforts to obtain the defendant's presence." Delacruz, supra. The prosecution's lack of due diligence in this case is further evidenced by the fact that Ms. Harris has not been produced at any of the court dates in this case since arraignment and the prosecution has not shown any effort beyond submitting orders to produce, when the orders to produce have not succeeded in the past. 
The prosecution commenced this case on October 24, 2024. They had ninety days after that date during which they could validly state ready. See § 30.30[1][b]. They made the necessary filings on the 57th day, leaving them time remaining to be ready for trial. A total of 144 days has now passed between arraignment and the filing of this motion. As explained above, "A defendant has the right to be present at any material state of the trial," (see, People v. Velasco, 77 NY2d 469 (1991)), and the prosecution's failure to exercise due diligence to produce Ms. Harris for trial is charged against them. "It is settled that delay in bringing a defendant to trial after indictment is not excused because the defendant is a prisoner elsewhere in New York[.]" People v. Winfrey, 20 NY2d 138 (1967). The prosecution's filing of orders to produce after each court date does not constitute due diligence, so all the time until the filing of the instant motion is chargeable to them. "[P]ostreadiness delay could be chargeable to the People and that the 103 days' delay in producing defendant in court was properly so charged[.]" People v. Anderson, 66 NY2d 529 (1985) affirming People v. Jones, 105 AD2d 179 (2nd Dept. 1984). Here, the prosecution fails to prove any CPL § 30.30 exclusions that would apply. Accordingly, the prosecution exhausted their readiness time and this case must be dismissed. "[D]ismissal is not only permissible but is required if the purpose of [CPL § 30.30] is to be carried out." People v. Daniels, 217 AD2d 448 (1st Dept.1995). 
The foregoing constitutes the order and decision of the court. 
Dated: May 5, 2025
Bronx, NY
Ralph L. Wolf, J.C.C.